**FEDERAL EXPRESS CORP., Appellee,**

v.

**TENNESSEE STATE BOARD OF EQUALIZATION and Tennessee Assessment Appeals Commission, Appellants.**

Supreme Court of Tennessee,
at Nashville.

Oct. 6, 1986.

Joe C. Peel, Ass't Atty. Gen., W.J. Michael Cody, Atty. Gen., Nashville, for appellants.

Waring Cox, Saul C. Belz and Earl J. Achwarz, Memphis, for appellee.

## OPINION

COOPER, Justice.

The application for permission to appeal was granted to review the holding of the Court of Appeals that Federal Express Corporation was not a "public utility" within the definition set forth in T.C.A. § 67–5–501(8), and the concomitant holding that personal property of Federal Express was to be assessed at the 30% commercial and industrial rate rather than the 55% public utility rate.

In 1979, the tax period in question, Federal operated an interstate door-to-door package delivery service, mainly using its own integrated air-ground transportation system of some 80 to 90 aircraft and approximately 1,500 delivery vans. Federal's aircraft were operated over a hub-and-spoke pattern with its facilities at the Memphis International Airport as the hub. Fed-

eral would pick up documents and packages, weighing no more than 70 pounds, from customers in various cities and transport them by air to Memphis. In Memphis, the documents and packages were sorted by destination, reloaded into the aircraft, flown to their destination cities by early morning, and were delivered by Federal's couriers if the consignee was within the air terminal zone. Under regulations in effect at the time, Federal could not pickup or deliver outside the air terminal zone. If package pickups and deliveries were required beyond the zone, the packages were either received from or tendered to an ICC certificated motor carrier.

Beginning in 1974, the Shelby County Tax Assessor assessed Federal Express's personal property as public utility property. In challenging the 1979 tax assessment, Federal initially questioned only the rate of depreciation applied to its fleet of 727 aircraft. The public utility classification issue evolved as the case progressed through the administrative review process and the lower courts. Most of the controversy centered on whether Federal Express, operating its aircraft under an All Cargo Certificate, could be considered to be a "commercial air carrier holding a certificate of convenience and necessity," which would bring it within the definition of a public utility. *See* § 67–5–501(8)(M). The assessor also argued that Federal is an "express company" and thus is within the classification of a public utility set forth in T.C.A. § 67–5–501(8)(F).

The Court of Appeals concluded that Federal's operation did not come within either classification, and that its property was not subject to being assessed at the public utility rate. We disagree. As we view the record, Federal Express's operation was that of an "express company" and, as such, was subject to an ad valorem tax based on an assessment of 55% of the value of its personal property.

Article II, Section 28 of the Tennessee Constitution, as amended in 1973, specifically authorized classification of property for ad valorem tax purposes according to

use. *General American Transportation Corporation v. Tennessee State Board of Equalization*, 536 S.W.2d 212 (Tenn.1976). It expressly authorized the classification of tangible personal property into three classifications: (1) public utility property to be assessed at 55% of its value; (2) industrial and commercial property to be assessed at 30% of its value and (3) all other tangible personal property to be assessed at 5% of its value. Article II, Section 28 of the Constitution of Tennessee. The definition of property in each class was left to be determined by the legislature.

For the tax year 1979, T.C.A. § 67–601, now § 67–5–501, provided, in pertinent part, that:

> *Definitions* —For purposes of classification of property:
>
> *    *    *    *    *    *
>
> (8) "Public utility property" is hereby defined to include all property of every kind, whether owned or leased, and use or held for use, directly or indirectly in the operation of a public utility, which shall include but not necessarily be limited to the following business entities, whether corporate or otherwise:
>
> *    *    *    *    *    *
>
> (F) Express companies:

"The primary purpose of statutory construction is to ascertain and give effect, if possible, to the intention of purpose of the legislature as expressed in the statute." *Westinghouse Electric Corp. v. King*, 678 S.W.2d 19 (Tenn.1984). Legislative intent is derived from construing the statute in its entirety, and it should be assumed the legislature used each word purposefully and that those words convey some intent and have a meaning and a purpose. *Tennessee Growers, Inc. v. King*, 682 S.W.2d 203, 205 (Tenn.1984). "While it is well settled that revenue statutes are to be liberally construed in favor of the taxpayer and strictly construed against the taxing authority [citation omitted], it is equally clear that the plain import of the language of the act is to be given effect [citation omitted], and that the legislative intent to tax must not be

thwarted by the strict construction rule." *International Harvester Company v. Carr*, 225 Tenn. 244, 259–260, 466 S.W.2d 207, 214 (1971) quoted with approval in *Oliver v. King*, 612 S.W.2d 152, 154 (Tenn. 1981).

The legislature's purpose in promulgating T.C.A. § 67–5–501(8) was to define "public utility property" by its use. The precise issue is whether Federal Express's use of its property is that of an "express company," a term which is not specifically defined in the statute.

Federal Express asserted in the Court of Appeals that it was not an "express company" because it collects and ships packages from the public via modes of transportation which it owns. According to Federal Express "[t]he term 'express company' is a term of art which dates to the latter part of the 19th Century. It was typically applied to a shipper who collected packages from the public and shipped those packages to the destination city via modes of transportation which it did not own." The cases relied upon in support of this contention do not define the term "express company;" they merely describe the operations of the particular express company that was involved in that litigation.

In *American Railway Express Co. v. Wright*, 128 Miss. 593, 91 So. 342 (1922) the Mississippi Supreme Court determined that the following was "a very good definition of an express company:"

A firm or corporation (usually a corporation) engaged in the business of transporting parcels or other moveable property, in the capacity of common carriers, and especially undertaking the safe carriage and speedy delivery of small but valuable packages of goods and money. 91 So. at pp. 343–344 *See Alsop v. Southern Express Co.*, 104 N.C. 278, 10 S.E. 297 (1899).

"An express company is a common carrier." *Express Company v. Johnson*, 92 Tenn. 326, 21 S.W. 666 (1893); *Railway Express Company v. Kessler*, 189 Va. 301, 52 S.E.2d 102 (1949). "A common carrier is one who, by virtue of his calling under-

takes for compensation to transport personal property from one place to another for all such as may choose to employ him; and everyone who undertakes to carry for compensation the goods of all people indifferently, is as to liability, to be deemed a common carrier." *Jackson Architectural Iron Works v. Hurlbut*, 158 N.Y. 34, 52 N.E. 665 (1899) quoted with approval by *Greyhound Corporation v. Michigan Public Service Commission*, 360 Mich. 578, 104 N.W.2d 395 (Mich.1960). "It is well known and understood that its, [an express company's], business is the transmission and delivery of packages, for which it receives a compensation." *American Railway Express Co. v. Wright, supra*, 91 So. at 343–344.

■ In our opinion the activities of Federal Express comes within the ordinary and plain meaning of the term "express company." While it is true that 19th century express companies transported packages via railroads and steamships owned by others, *see Memphis & Little Rock Railway Co. v. Southern Express Co.*, 117 U.S. 1, 6 S.Ct. 542, 628, 29 L.Ed. 791 (1886), we have been unable to find any case which has defined express companies in such terms. There seems to be no policy reason to differentiate between companies which pick up, transport, and deliver small packages via modes of transportation owned by others and companies which perform this service primarily using modes of transportation which that company owns. Both types of companies are common carriers owing similar duties to the general public. "All common carriers are public utilities, but all public utilities are not common carriers." *Aberdeen Cable TV Service, Inc. v. City of Aberdeen*, 176 N.W. 738 (S.D.1970). Thus a company transporting packages on an expedited basis as a common carrier must be deemed to be an express company which falls within the definition of a "public utility" for purposes of T.C.A. § 67–5–501.

■ Federal Express also argues that to assess its property for ad valorem tax purposes at 55% of its value, while assessing the property of railroads at the industrial

and commercial rate of 30% of value, violates the Equal Protection Clause of the United States Constitution and Article II, Section 28 of the Tennessee Constitution, which requires "the ratio of assessment to value of property in each class or subclass shall be equal and uniform throughout the state. The legislature classified railroads as public utilities and assessed them for ad valorem tax purposes at 55% of the value of their properties. However, the Congress of the United States, by Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11503 ("4-R Act"), preempted the state classification of railroads and provided that they should be taxed as industrial and commercial property are taxed. The Act, having as its purpose the revitalization of railroads, affected only that business. Thus leaving in effect the state classification of other businesses as public utilities. The assessment of each of the businesses classed as public utilities is at the same ratio to value as the assessment of Federal Express property; consequently, we find no violation of either Article II, Section 28 of the Tennessee Constitution or the Equal Protection Clause of the Federal Constitution.

The judgment of the Court of Appeals is reversed. The judgment of the Chancery Court dismissing the cause is affirmed. Costs are adjudged against Federal Express Corporation and its surety.

BROCK, C.J., and FONES, HARBISON, and DROWOTA, JJ., concur.