No. 69,116

In the Matter of the Appeal of ANR Pipeline Company; Colorado Interstate Gas Company; Northern Natural Gas Company; Mapco Fractionator, Inc.; Mapco Ammonia Pipeline, Inc.; Mid-America Pipeline Company; and Enron Liquids Pipeline Company from a Decision of The Director of Property Valuation of The State of Kansas.

(866 P.2d 1060)

Opinion filed January 21, 1994.

*Richard D. Greene*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Robert W. Coykendall*, of the same firm; *Karen Pauley*, *Virginia Amend*, and *Nancy Morgan*, of ANR Pipeline Company and Colorado Interstate Gas Company, of Colorado Springs, Colorado; *E. Chris Kaitson*, of Northern Natural Gas Company and Enron Liquids Pipeline Company, of Houston, Texas; and *Charlene Sinclair*, of MAPCO Fractionator, Inc., MAPCO Ammonia Pipeline, Inc., and Mid-America Pipeline Company, of Tulsa, Oklahoma, were with him on the briefs for appellants.

*William E. Waters*, of Kansas Department of Revenue, of Topeka, argued the cause, and *Laura E. Johnson*, of the same department, was with him on the brief for appellee.

*Benjamin J. Neill* and *Thomas H. Bornholdt*, of Neill, Bornholdt & Terrill, of Overland Park, were on the brief for *amicus curiae* Kansas Association of Counties.

*Lisa Ross Wetzler*, assistant county counselor, Johnson County, was on the brief for *amici curiae* Board of County Commissioners of Johnson County, Kansas, and County Appraiser of Johnson County, Kansas.

The opinion of the court was delivered by

McFARLAND, J.: The appellants herein, with one exception, are open access common carriers that transport fuels in interstate commerce. The one exception, Mapco Fractionator, Inc., provides fractionating services to shippers of natural gas. Each is classified as a public utility for real and personal property tax purposes. Each was unsuccessful in its effort before the Director of Property Valuation (DPV) to have its property assessed on the same bases as is railroad property. Appeals were taken to the Board of Tax Appeals (BOTA), which upheld the decisions of the DPV. The appellants appeal from said BOTA order. The appellants contend the BOTA order is in violation of the uniform and equal requirement of art. 11, § 1 of the Kansas Constitution, the Equal Protection Clauses of the Kansas and United States Constitutions, and the Commerce Clause of the United States Constitution.

The appeals were presented to BOTA on stipulated facts. Here, as there, only questions of law are presented for determination. The circumstances giving rise to the controversies herein may be stated as follows. The tax years 1990 and 1991 are involved. At all pertinent times, art. 11, § 1(b) of the Kansas Constitution provided:

"(1) The provisions of this subsection (b) shall govern the assessment and taxation of property on and after January 1, 1989, and each year thereafter. Except as otherwise hereinafter specifically provided, the legislature shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation. The provisions of this subsection (b) shall not be applicable to the taxation of motor vehicles, except as otherwise hereinafter specifically provided, mineral products, money, mortgages, notes and other evidence of debt and grain. Property shall be classified into the following classes for the purpose of assessment and assessed at the percentage of value prescribed therefor:

"Class 1 shall consist of real property. Real property shall be further classified into four subclasses. Such property shall be defined by law for the purpose of subclassification and assessed uniformly as to subclass at the following percentages of value:

(A) Real property used for residential purposes including multi-family residential real property ............................. 12%
(B) Land devoted to agricultural use which shall be valued upon the basis of its agricultural income or agricultural productivity pursuant to section 12 of article 11 of the constitution....... 30%
(C) Vacant lots ............................................... 12%
(D) All other urban and rural real property not otherwise specifically sub-classified........................................ 30%

"Class 2 shall consist of tangible personal property. Such tangible personal property shall be further classified into six subclasses, shall be defined by law for the purpose of subclassification and assessed uniformly as to subclass at the following percentages of value:

(A) Mobile homes used for residential purposes ................. 12%
(B) Mineral leasehold interests .................................. 30%
(C) Public utility tangible personal property ..................... 30%
(D) All categories of motor vehicles not defined and specifically valued and taxed pursuant to law enacted prior to January 1, 1985....................................................... 30%
(E) Commercial and industrial machinery and equipment which, if its economic life is seven years or more, shall be valued at its retail cost when new less seven-year straight-line depreciation, or which, if its economic life is less than seven years, shall be valued at its retail cost when new less straight-line depreciation over its economic life, except that, the value so obtained for such property, notwithstanding its economic life and as long as such property is being used, shall not be less than 20% of the retail cost when new of such property...... 20%
(F) All other tangible personal property not otherwise specifically classified................................................. 30%

"(2) All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, farm machinery and equipment, merchant's and manufacturer's inventories and livestock and all household goods and personal effects not used for the production of income, shall be exempted from property taxation."

This article was substantially amended in 1992, effective January 1, 1993, but said amendments are not at issue herein.

Under the provisions applicable herein, real and personal property owned by public utilities was to be assessed at 30 percent. The appellants and railroads are public utilities. K.S.A. 79-5a01.

In 1976, Congress enacted the Railroad Revitalization & Regulatory Reform Act of 1976 (Pub. L. 94-210, 90 Stat. 31, 54-5 [codified at 49 U.S.C. § 11503 (1988)]). The Act, commonly referred to as the 4-R Act, provides, in pertinent part:

"(a) In this section—

(1) 'assessment' means valuation for a property tax levied by a taxing district.

(2) 'assessment jurisdiction' means a geographical area in a State used in determining the assessed value of property for ad valorem taxation.

(3) 'rail transportation property' means property, as defined by the Interstate Commerce Commission, owned or used by a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title [49 U.S.C. §§ 10501 *et seq.*].

(4) 'commercial and industrial property' means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy.

"(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.

(3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(4) impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title [49 U.S.C. §§ 10501 *et seq.*].

"(c) Notwithstanding section 1341 of title 28 [28 U.S.C. § 1341] and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section. Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction. The burden of proof in determining assessed value and true market value is governed by State law. If the ratio of the assessed value of other commercial and industrial property in the assessment jurisdiction to the true market value of all other commercial and industrial property cannot be determined to the satisfaction of the district court through the random-sampling method known as a sales assessment ratio study (to be carried out under statistical principles applicable to such a study), the court shall find, as a violation of this section—

(1) an assessment of the rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the assessed value of all other property subject to a property tax levy in the assessment jurisdiction has to the true market value of all other commercial and industrial property; and

(2) the collection of an ad valorem property tax on the rail transportation property at a tax rate that exceeds the tax ratio rate applicable to taxable property in the taxing district."

The purpose of the 4-R Act was to prohibit discriminatory taxation of railroad real and personal property by state and local property tax laws and to promote the revitalization of the railway system nationwide. See *Clinchfield R. Co. v. Lynch*, 784 F.2d 545, 551 (4th Cir. 1986); *State of Ariz. v. Atchison, T. & S.F.R. Co.*, 656 F.2d 398, 400 (9th Cir. 1981).

The 4-R Act spawned years of federal litigation wherein railroads sought to utilize it to reduce their real and personal property taxes in Kansas. See, *e.g., Atchison, Topeka & S.F.Ry. Co. v. Lennen*, 640 F.2d 255 (10th Cir. 1981); *Atchison, Topeka and Santa Fe Ry. Co. v. Lennen*, 552 F. Supp. 1031 (D. Kan. 1982), *aff'd in part, rev'd in part* 732 F.2d 1495 (10th Cir. 1984); *Atchison, T. & S.F.Ry. Co. v. Lennen*, 531 F. Supp. 220 (D. Kan. 1981).

That litigation ended in 1989 with the entry of consent decrees. The parties rely on the decree entered on August 11, 1989, in *Burlington Northern Railroad Company v. Rolfs*, D. Kan., No. 89-4124-R, filed August 11, 1989. The effect of this decree was to fix the railroads' assessment rate for real property at 25 percent for 1990 and 22.3 percent for 1991. The parties have stipulated that 80 percent of the railroads' personal property was exempted from taxation with the balance of 20 percent to be assessed at 30 percent of the value. Like BOTA, we are at a loss from the record to see the basis for this exemption, but accept the parties' stipulation for the purposes of this appeal.

The appellants' basic position is quite simple and direct. They believe they are entitled to the same deal the railroads received for the tax years 1990 and 1991 as a result of the consent decree. There is no challenge herein to any portion of the decree. The appellants are seeking only to be taxed on the same basis as to their real and personal property for the years in dispute in the respective cases.

## UNIFORM AND EQUAL

For their first issue, appellants contend that the disparate treatment between pipelines and railroads violates the Kansas constitutional mandate of uniform and equal treatment among members of the same subclass. Under art. 11, § 1(b), pipeline and railroad real estate are in subclass (D) to be assessed on the basis of 30 percent of value, and their tangible personal property is in subclass (C), also to be assessed at 30 percent of value.

For many years art. 11, § 1 provided that all property was to be assessed on a uniform basis with exceptions thereto being limited to particular types of property, regardless of ownership.

Under this system, for example, typewriters of the same make and model, purchased the same day, should be assessed at the general rate regardless of the nature of the usage thereof by the respective owner. It would matter not whether a particular typewriter was owned by a public utility, a manufacturer of goods, or a grocery store. The philosophy underlying this concept was set forth in *Wheeler v. Weightman*, 96 Kan. 50, 58, 149 Pac. 977 (1915), as follows:

"The essentials [of the Uniform and Equal Clause] are that each man in city, county, and state is interested in maintaining the state and local governments. The protection which they afford and the duty to maintain them are reciprocal. The burden of supporting them should be borne equally by all, and this equality consists in each one contributing in proportion to the amount of his property. To this end all property in the state must be listed and valued for the purpose of taxation, the rate of assessment and taxation to be uniform and equal throughout the jurisdiction levying the tax."

Under the 1985 amendments to art. 11, § 1, real estate was essentially classified by usage, and personal property was essentially classified by ownership. This basic alteration in the scheme of taxation must be borne in mind when reading our earlier cases.

The appellants contend that one of these cases, *Voran v. Wright*, 129 Kan. 601, 284 Pac. 807 (1930), is dispositive of this issue. We do not agree. The DPV and the *amici* herein contend *Voran* is inapplicable. Their reasons vary. The pertinent portion of art. 11, § 1 involved in *Voran* was as follows:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, *except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as*

*the legislature shall provide.* All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least two hundred dollars for each family, shall be exempted from taxation." (Emphasis in original.) 129 Kan. at 606.

Of this provision the *Voran* court stated:

"Whatever may have been proper as to classification of owners under this section before the amendment, there can no longer be any question in that regard. A classification as to owners is not now permissible. The only classification authorized or tolerated by this constitutional provision is that of property, and it makes no difference by whom it may be owned, whether by individual, merchant, manufacturer, banking institution or other corporation. Every classification is now limited to property, and only four kinds of property, viz., mineral products, money, mortgages, notes and other evidence of debt." 129 Kan. at 606-07.

The underlying problem in *Voran* was the taxation of the property of national banks. Of this the *Voran* court stated:

"National banks, being governmental agencies, would not be subject to a tax imposed by the state, and the only way to reach the property of national banks was by an indirect method sanctioned by this act of congress. It is argued that the state could have taxed the shares of stock in national banks without the permission thus granted by congress, but it has been granted with requirements and restrictions, and this state and all others have attempted to comply with the restrictions and terms imposed rather than try to accomplish the same in disregard of such consent, even if it could have been so done.

"Instead of taxing the national bank on the valuation of its property, the act authorizes the state to tax its shares of stock against the holders thereof, but the act expressly prescribes that such tax shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state coming into competition with the business of national banks. This act is known as section 5219 of the Revised Statutes of the United States, which was amended in 1923 and again in 1926, and is in part as follows:

'Sec. 5219. The legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:

'1. (a) The imposition by any state of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause.

'(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks: *Provided,* That bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section.' " 129 Kan. 605-06.

In the effort to comply with the federal law and thus reach national bank property for taxation purposes, the Kansas Legislature enacted certain statutes. A federal court held that shareowners of national banks could not be subjected to the general ad valorem tax rate under section 5219. This left state bank shareowners being assessed at the general rate and national bank shareowners being assessed on the lower intangible tax rate. The *Voran* court, applying the constitutional provisions in effect at the time, held certain portions of one of the statutes unconstitutional and thereby permitted the plaintiff owners of state bank shares to be taxed at the intangibles tax rate, as were their counterparts owning national bank shares.

*Voran* is distinguishable in a number of respects from the situation before us. National bank property at the time in *Voran* was not taxable except by compliance with the federal act. Art. 11, § 1, in the form in effect in *Voran*, did not contain a classification system. There were no exceptions to the general rate other than for mineral products, money, mortgages, notes, and other evidence of debt which the legislature could classify and take uniformly throughout the particular class. Shares of stock were in none of these exceptions. The present form of art. 11, § 1 classifies real and personal property based in part upon usage or ownership.

The 4-R Act, as it applies to Kansas and as reflected in the consent decree, simply required that railroad property be assessed at no higher rate than commercial or industrial property. Railroad property was thereby made an exception to subclasses to which public utility property was assigned. This exception was amended into art. 11, § 1 in 1992, where the public utility real property subclass and the commercial and industrial subclasses provide:

"(5) Public utility real property, except railroad real property which shall be assessed at the average rate that all other commercial and industrial property is assessed............................ 33%

"(6) Real property used for commercial and industrial purposes and buildings and other improvements located upon land devoted to agricultural use ......................................... 25%"

Likewise in the 1992 amendment, personal property subclasses for public utility and commercial and industrial property provide:

"(3) Public utility tangible personal property including inventories thereof, except railroad personal property including inventories thereof, which shall be assessed at the average rate all other commercial and industrial property is assessed................ 33%

. . . .

"(5) Commercial and industrial machinery and equipment which, if its economic life is seven years or more, shall be valued at its retail cost when new less seven-year straight-line depreciation, or which, if its economic life is less than seven years, shall be valued at its retail cost when new less straight-line depreciation over its economic life, except that, the value so obtained for such property, notwithstanding its economic life and as long as such property is being used, shall not be less than 20% of the retail cost when new of such property...... 25%"

We agree with appellants that a "uniform and equal" requirement has been constant in art. 11, § 1, but there has been a pertinent shift in the application of the requirement. In *Voran*, art. 11, § 1 essentially had all property in one grouping with certain specific types of property being excepted therefrom for classification, if the legislature desired. The *legislature was charged with providing a uniform and equal rate* of assessment and taxation for the general group and to tax the excepted types of property uniformly within their respective class. In contrast, the form of art. 11, § 1 before us *classifies all real and personal property and fixes the assessment rate for each subclass.* The legislature is charged with providing only a *uniform and equal basis for valuation and rate of taxation.* Thus, rate of assessment for particular property is now contained within the article and is not a matter for the legislature to determine on a uniform and equal basis. Under the article, public utility property is assessed at 30 percent.

This distinction has much to do with the result reached in *Voran*. Bank shares, not being in an exception, would ordinarily

be in the general group. To bring national bank shares into the tax base, the legislature enacted legislation which ran afoul of federal law and resulted, as a result of a federal court decision, in state bank shares being taxed on a different basis than federal bank shares. Portions of the statutes which had led to this result were held violative of the legislature's duty to provide a uniform and equal rate of assessment and taxation.

In the case before us, the 4-R Act placed limitations on state taxation of railroad property. Railroad property had to be treated the same as "other commercial and industrial property." There can be little doubt that this is a preemption. If it is not a preemption, the 4-R Act is just a piece of paper suggesting railroads should be treated like other commercial and industrial property and the enforcement section thereof is surplusage. Clearly, that was not the Congressional intent in enacting the 4-R Act.

In *Goben v. Barry*, 237 Kan. 822, Syl. ¶ 3, 703 P.2d 1378 (1985), a preemption case, we held:

"In making a determination of federal preemption, a court should examine those concerns emphasized by Congress in enacting the legislation. State law should be preempted only to the extent necessary to protect achievement of the purposes of the federal act in question."

The purpose of the 4-R Act was to benefit and revitalize railroads. The brief of the Department of Revenue states pipeline companies attempted unsuccessfully to obtain like federal legislation in their favor. The statement is not disputed. In any event, there is absolutely no indication in the record that Congress intended, by the enactment of 4-R, to preempt or affect how pipeline property was assessed or taxed by the states. Limiting the preemption of the 4-R Act to its purposes and application results in minimal interference with the classification system provided by art. 11, § 1.

The appellants argue that we should adopt the rationale of the Nebraska Supreme Court in *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989). Nebraska held in favor of the pipelines in their quest to be afforded the same favorable treatment as railroads under the 4-R Act. We decline to do so. The Nebraska Constitution does not have property classifications and is more akin to art. 11, § 1 in the form

applicable in *Voran*. We do not find the Nebraska rationale persuasive on this issue.

In *Federal Exp. Corp. v. Tenn. State Bd.*, 717 S.W.2d 873 (Tenn. 1986), the Tennessee Supreme Court rejected a similar challenge on "uniform and equal" grounds. This case will be discussed in more detail in the next issue.

We conclude that the BOTA order refusing to afford the appellants their requested relief of having their property assessed on the same basis as railroads is not violative of the uniform and equal provision of art. 11, § 1 of the Kansas Constitution.

### EQUAL PROTECTION

For their second issue, appellants contend the BOTA order is violative of the Kansas and United States Constitutions' Equal Protection Clauses.

The 14th Amendment of the United States Constitution provides that no state can make or enforce a law which shall deny to any person within its jurisdiction the equal protection of the laws. Section 1 of the Bill of Rights of the Kansas Constitution provides: "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness." Appellants do not argue the Kansas Constitution grants them any greater rights herein than does the United States Constitution. In the following discussion, we will refer only to the United States Constitution, but such discussion should be considered as being equally applicable to the Kansas Constitution argument.

Similar arguments were raised in two cases in other jurisdictions and rejected.

In *State v. Colonial Pipeline Co.*, 471 So. 2d 408 (Ala. Civ. App. 1984), the Alabama Court of Civil Appeals considered an oil pipeline's challenge to the assessment of its property at the public utility rate, which was the highest rate under Alabama's classification system. Colonial contended, *inter alia*, that assessment of railroad property which was in the same classification as the pipeline at a lesser rate by virtue of the 4-R Act was violative of the Equal Protection Clause of the United States Constitution. The Alabama court stated:

"If there may be some discrimination against Colonial, it is not arbitrary or unreasonable. Until the state was specifically forbidden to tax the property of railroads at a higher assessment ratio than other commercial and industrial property by Congress in 49 U.S.C.A. § 11503, it classified the property of railroads as Class I property. Moreover, until forbidden to do so by the Circuit Court of Montgomery County in *Delta Airlines v. Department of Revenue*, Civil Action No. CV-80-116-G, the Department classified the property of airlines as utilities and taxed them as Class I property. The Tax Equity & Fiscal Responsibility Act of 1982, § 532 amending 49 U.S.C. § 1513(b) and (d), now has the effect of forbidding the state from assessing property of air carriers at a higher rate than other commercial and industrial property.

"Currently, the state is specifically forbidden to classify the property of motor carriers as Class I property by 49 U.S.C. § 11503a, which gives the motor carriers the same protection from high assessment rates that is afforded railroads and air carriers. Were it not for the supremacy of federal statutes over state law, airlines, trucklines and railroads, which are included in § 40-21-1, would be subject to the same Class I classification as is assigned Colonial's property. The preemption for tax purposes of those other entities does not destroy the classification by state law from which they were exempted and to which Colonial continues to belong." 471 So. 2d at 412-13.

In *Federal Exp. Corp. v. Tenn. State Bd.*, 717 S.W.2d 873, a taxpayer challenged its property assessment as a public utility rather than as commercial and industrial property. While ruling that the plaintiff taxpayer was a "public utility" for ad valorem taxation, the Tennessee Supreme Court turned aside the taxpayer's equal protection argument, stating:

"Federal Express also argues that to assess its property for ad valorem tax purposes at 55% of its value, while assessing the property of railroads at the industrial and commercial rate of 30% of value, violates the Equal Protection Clause of the United States Constitution and Article II, Section 28 of the Tennessee Constitution, which requires 'the ratio of assessment to value of property in each class or subclass shall be equal and uniform throughout the state.' The legislature classified railroads as public utilities and assessed them for ad valorem tax purposes at 55% of the value of their properties. However, the Congress of the United States, by Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11503 ('4-R Act'), preempted the state classification of railroads and provided that they should be taxed as industrial and commercial property are taxed. The Act, having as its purpose the revitalization of railroads, affected only that business. Thus leaving in effect the state classification of other businesses as public utilities. The assessment of each of the businesses classed as public utilities is at the same ratio to value as the assessment of Federal Express property; consequently, we find no violation of either Article

II, Section 28 of the Tennessee Constitution or the Equal Protection Clause of the Federal Constitution." 717 S.W.2d at 875-76.

To buy the appellants' argument, we would have to conclude the 4-R Act, in essence, eliminated the public utility subclass of personal property and transferred the same to the commercial and industrial subclass and made a major alteration to the "all other" subclass relative to real property. Again, appellants rely on the Nebraska case of *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, which held that taxing pipeline property on a different basis than railroad property was violative of the Equal Protection Clause as well as the uniform and equal state constitutional requirement. Again, we find the Nebraska opinion unpersuasive.

Art. 11, § 1 treats all public utility property alike. The 4-R Act affects only railroad property and preempts the classification only as to such property.

Appellants complain that BOTA did not address its equal protection arguments in the order entered. It is true the BOTA order does not specifically refer to the equal protection argument as such, but, from the language employed therein and the cases cited, it is clear such was considered.

We conclude that the BOTA order is not violative of the Equal Protection Clauses of the United States or Kansas Constitutions.

## COMMERCE CLAUSE

For their third issue, appellants contend the BOTA order is violative of the Commerce Clause of the United States Constitution.

The Commerce Clause provides that the "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. State regulation that is contrary to the constitutional principle of insuring that the conduct of individual states does not work to the detriment of the nation as a whole is invalid under the dormant Commerce Clause. *Wardair Canada v. Florida Dept. of Revenue*, 477 U.S. 1, 7-8, 91 L. Ed. 2d 1, 106 S. Ct. 2369 (1986).

Appellants assert that the property tax imposed by the State of Kansas upon pipeline property violates the Commerce Clause of the United States Constitution because the tax is discriminatory

and unduly burdensome upon interstate commerce and violative of the third and fourth prongs of the four-prong test enumerated in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977). The four-prong test enumerated in *Complete Auto* is: (1) The tax must be applied to an activity with a substantial nexus with the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to the services provided by the state. 430 U.S. at 279.

Appellants' argument on this issue lacks focus. Much of it seems to be a broad criticism of the classification system itself without any reference to railroads or the 4-R Act. This argument is difficult to understand. Public utility real estate is in the "all other" subclass which includes everything but residential property, agricultural land, and vacant lots. Public utility personal property has its own subclass. Pipeline operations crossing only county lines are assessed at the same rate as are those crossing state lines. Kan. Const. art. 11, § 1; K.S.A. 79-5a01. Pipeline property is valued by the unit valuation method and that valuation is apportioned to Kansas based on the percentage the pipeline company's original cost in Kansas bears to the total original cost of the company. See K.S.A. 79-5a04. Thus, as required by *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 69 L. Ed. 2d 884, 101 S. Ct. 2946 (1981), a pipeline company's property is assessed in Kansas in proportion to the pipeline's presence in the state.

The facts herein do not support a serious challenge based upon the Commerce Clause. The appellants contend the DPV and BOTA violated the Commerce Clause by not giving them the tax advantage that the 4-R Act mandated for the railroads. The appellants and the railroads are all engaged in interstate commerce. Kansas treated them alike in its constitution and in its statutory definition of public utilities. Congress chose to favor the railroads by enactment of the 4-R Act. Congress is the source of the alleged discrimination underlying this appeal. Appellants do not challenge the 4-R Act or the consent decree thereunder. Rather, they want to ride piggyback to gain the same tax treatment in Kansas.

We find no violation of the Commerce Clause in BOTA's refusal to extend the 4-R Act and the federal court order to appellants

and to order appellants' property be assessed on the same basis as railroad property.

We conclude that the BOTA order is not violative of the Commerce Clause of the United States Constitution.

The order of the Board of Tax Appeals is affirmed.

ABBOTT, J., not participating.

PRAGER, C.J. Retired, assigned.