J. HAROLD SHANKLE,                     )
                                       )
        Plaintiff/Appellant,           )        Appeal No.
                                       )        01-A-01-9609-CH-00387
v.                                     )
                                       )        Bedford Chancery
THE BEDFORD COUNTY BOARD OF            )        No.    20,492
EDUCATION, THE BEDFORD COUNTY          )
BOARD OF COMMISSIONERS, THE            )
PUBLIC BUILDING AUTHORITY OF           )
BEDFORD COUNTY, and THE SCHOOL         )
COMPANY,                               )
                                       )
        Defendants/Appellees.          )

FILED

**February 28, 1997**

**Cecil W. Crowson
Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT FOR BEDFORD COUNTY

AT SHELBYVILLE, TENNESSEE


THE HONORABLE F. LEE RUSSELL, CHANCELLOR


GREGORY L. CASHION
JOHN W. HEACOCK                          AUBREY B. HARWELL, JR.
Manier, Herod, Hollabaugh               Neal & Harwell
 & Smith                                2000 First Union Tower
150 fourth Avenue North, Suite 2200     150 Fourth Avenue North
Nashville, Tennessee 37219              Nashville, Tennessee  37219
ATTORNEYS FOR PLAINTIFF/APPELLANT


JOHN T. BOBO                             HARRIS A. GILBERT
Bobo, Hunt & Bobo                        CHARLES W. BONE
202 First national Bank Building         KEITH C. DENNEN
P. O. Box 169                            Wyatt, Tarrant & Combs
Shelbyville, Tennessee 37160-0169        1500 Nashville City Center
ATTORNEY FOR THE COUNTY                  511 Union Street
COMMISSION OF BEDFORD COUNTY,            Nashville, Tennessee 37219
TENNESSEE, THE BOARD OF EDUCATION
OF BEDFORD COUNTY, TENNESSEE and         ATTORNEYS FOR THE SCHOOL
THE PUBLIC BUILDING AUTHORITY OF         COMPANY, L.L.C.
BEDFORD COUNTY, TENNESSEE


AFFIRMED AND REMANDED


SAMUEL L. LEWIS, JUDGE

# OPINION

This is an appeal by plaintiff/appellant, J. Harold Shankle Company, Inc., from the decision of the Bedford County Chancery Court granting defendants/appellees' motion for summary judgment. The case involved the construction and application of the Public Building Authority Act of 1971 ("the Act"), Tennessee Code Annotated sections 12-10-101 to 12-101-124.

The facts of this case are very complicated; however, the parties entered joint stipulations which ease the understanding of the case. The relevant parties and participants include: plaintiff/appellant, J. Harold Shankle Company, Inc. ("Shankle"); defendant/appellee, The Public Building Authority ("the Authority"); defendant/appellee, the Board of Education for Bedford County ("the Board"); defendant/appellee, the County Commission for Bedford County ("the Commission"); defendant/appellee, The School Company, L.L.C. ("the Company"); H and M construction Co. ("H & M"); the Building Committee ("the Committee"); Educational Facilities Services, L.P. ("EFS"); R. Gregory Hinote; and Mark Gill. Hinote is the Chief Manager of the Company and was a limited partner in EFS as of March 1995.

Prior to 1994, the Board determined that it was necessary to renovate and construct additions to certain schools ("the Project"). The Board decided to use the "construction manager" method[1] for the construction of the Project as opposed to the "hard" bid method. During 1994, the Board received several proposals for construction manager services. Shankle did not submit a proposal to serve as construction manager. In October 1994, the Board met and awarded the contact to H & M. In January 1995, the Board created the Committee to oversee the construction. The place and time of the meeting was reported in the *Shelbyville Times-Gazette*.

---

[1]  In their joint stipulations, the parties described the "construction manager" method as follows: Pursuant to the construction manager method, the Board serves as its own general contractor contracting directly with subcontractors and suppliers. The Board hires a construction manager to manage the project and supervise the construction on behalf of the Board. The construction manager is not paid on a "cost-plus" basis, but is instead paid a set fee for its services. Pursuant to the "construction manager method," the Board continues to bear the risk of cost overruns although the Board has greater control because the Board is contracting directly with the subcontractors and the suppliers.

In March 1995, the Board heard a proposal from Gill and Hinote in their roles as representatives of EFS. Their proposal included alternatives to the "hard" bid method and the "construction manager" method. The time and place of the meeting was reported in the *Shelbyville Times-Gazette.* In June 1995, the Company made a presentation to the Committee with respect to non-traditional methods of developing schools. In July, the Company made a similar presentation to the Board. The Company made yet another presentation on 6 September 1995 to the Commission's Budget and Finance Committee. The presentation covered the advantages of using a Public Building Authority to develop schools. After the presentation, the Budget and Finance Committee recommended that the Commission endorse the use of a Public Building Authority for the Project. These presentations were all made at public meetings which were reported in the *Shelbyville Times-Gazette.*

On 12 September 1995, the Company made a detailed presentation on the use of a Public Building authority to the Commission at its regular public meeting. The place and time of the meeting was reported in the *Shelbyville Times-Gazette.* After the presentation and the attorney-client session, the Commission endorsed the creation of a public building authority to develop schools and to renovate existing schools including the Project. In addition, the Commission endorsed the Company's participation in this alternate method. In October 1995, the Commission adopted a resolution approving the creation of the Authority. The place and time of the meeting was reported in the *Shelbyville Times-Gazette.* The minutes of the meeting describe the Authority's responsibility as follows: "[t]o meet at least once, annually, to contract with a third party (The School Company) to support the construction, repair, and improvement of public buildings, structures, and facilities."

On 17 October 1995, the members of the proposed Authority held a joint public meeting with the Committee. At the meeting, the Authority, the Committee, and the Company discussed the Company's proposal. The place and time of the meeting was reported in the *Shelbyville Times-Gazette.* On 26 October, the Board met to consider the execution of an agreement with the Company. Hinote, acting on behalf of the Company, provided copies of proposed contracts between the Board and the Authority and between the Authority and the Company. The place and time of the meeting was reported in the *Shelbyville Times-Gazette.*

On 30 October 1995, at 11:31 a.m., an application to create and incorporate the Authority pursuant to the Act was filed with the Secretary of State. The Secretary granted a corporate charter to the Authority on 30 October. At 6:00 p.m. that same day, the Board held a meeting and approved the contract between it and the Authority. At 7:00 p.m., the Authority held a public meeting. The Authority approved the contract between it and the Company and the contract between the Board and the Authority. The contract between the Authority and the Company provided a guarantee against cost overruns in the form of a guaranteed maximum price. The contract also provided that the Company pay liquidated damages for each day the construction continued past the guaranteed completion date. The place and time of both meetings were reported in the *Shelbyville Times-Gazette* on 27 October 1995. The parties executed both contacts on 19 December 1995. On this same day, the parties terminated the contract between the Board and H & M with H & M's consent.

Between 27 July 1995 and 30 October 1995, no one other than the Company appeared before either the Commission, the Board, or the Authority to make a proposal in regard to the Project. Moreover, no one other than the Company requested an opportunity to appear and submit a proposal. The Commission, the Board, or the Authority did not, however, make an express invitation for receipt of proposals with respect to the Project. Between 30 October and 19 December 1995, Shankle did not appear or request an opportunity to appear before either the Commission, the Board, or the Authority.

On 19 December 1995, the Company executed an agreement with an architectural and engineering firm for their services on the Project. In January 1996, the Company executed agreements with H & M to serve as the general contractor for the construction of Phase I of the Project and the preconstruction work associated with Phase II of the Project. The construction of the Project began thereafter. The contract provided that the parties would complete all new construction on 29 July 1996 and all other work no later than 2 September 1996. There have been no change orders approved or submitted that alter either the guaranteed maximum price or completion date as of 8 May 1996.

On 1 March 1996, Shankle filed a declaratory judgment action in the Chancery Court for Bedford County. It alleged that appellees violated Tennessee law when they formed the Authority and awarded public contracts to the Company without competitive bidding or a public invitation for proposals. The parties entered into numerous joint stipulation settling all factual issues. Thus, both parties filed motions for summary judgment. After hearing oral argument, the chancellor filed a memorandum opinion granting appellees' motion for summary judgment. Thereafter, the chancellor entered final judgment in favor of appellees on 18 July 1996. Shankle filed a timely notice of appeal.

Shankle's first and second issues are "[w]hether the Public Building Authority Act of 1971, T.C.A. § 12-10-101, et seq., excludes public building authorities from all Tennessee state and local laws, including competitive bidding statutes" and "[w]hether the 1995 Amendments to the Public Building Authority Act create an exception to the competitive bidding statutes." Both issues involve the statutory construction of the Act; therefore, we address them together.

The courts of this State have set out the rules of statutory construction on numerous occasions. Clearly, the primary purpose of statutory construction is to ascertain and give effect to the legislature's intent. *Federal Express Corp. v. Tennessee State Bd. Of Equalization*, 717 S.W.2d 873, 874 (Tenn. 1986). Courts must "determine the legislative intent, whenever possible, from the plain language of the statute." *Wilson v. Johnson County*, 879 S.W.2d 807, 809 (Tenn. 1994). Moreover, courts must look to the statute in its entirety presuming "the legislature intended that every word used in a statute would have a purpose and would convey meaning." *Cohen v. Cohen*, No. 01S01-9510-CV-00185, 1996 WL 520312, at *3 (Tenn. 1996).

In passing the Act, the General Assembly expressed its concern over the critical state of public buildings in Tennessee. Tenn. Code Ann. § 12-10-102(a), (b) (1992). The Assembly found that: 1) public buildings in the State of Tennessee are "inadequate and outmoded"; 2) facilities are not "adequate to meet the needs of the growing population"; 3) public records and other documents are housed in "poorly protected and overcrowded spaces"; 4) the shortage of adequate buildings has

seriously impaired the government's ability to provide educational services; 5) the health, safety, and welfare of the citizens of the State is adversely affected by the serious deficiencies in these buildings. *Id.* § 12-10-102(a). Given these findings, the General Assembly authorized "the incorporation in the several counties, cities, and towns in this state of public corporations to finance, acquire, erect, own, operate, maintain, lease, and/or dispose of public buildings, structures, and facilities." *Id.* The General Assembly then gave the public corporations the formal name of public building authorities. *Id.* § 12-10-103 (Supp. 1996).

The General Assembly granted the public building authorities extensive powers. *See id.* §§ 12-10-109, -118 to -122 (1992 & Supp. 1996). These powers exceeded those of cities and counties and enabled public building authorities to accomplish goals beyond the capabilities of either the city or the county. For example, public building authorities enable small governmental entities to fund and build large scale projects jointly. *See id.* § 12-10-120 (1992). Also, public building authorities enable a city or a county to issue bonds without a public referendum. *Id.* § 12-10-122. Overall, the use of public building authorities enables cities and counties to construct projects using the most advantageous methods available.

The language of particular relevance to the issues before the court is found in Tennessee Code Annotated sections 12-10-122 and 12-10-124. The General Assembly enacted Tennessee Code Annotated section 12-10-122 as part of the original Act in 1971 and has not seen fit to amend it since that time. Tennessee Code Annotated section 12-10-122 provides, in part:

> Projects may be acquired, purchased, constructed, reconstructed, improved, bettered and extended and bonds may be issued under this chapter for such purposes, notwithstanding that any other general, special or local law may provide for the acquisition, purchase, construction, reconstruction, improvement, betterment and extension of a like project, or the issuance of bonds for like purposes, and without regard to the requirements, restrictions, limitations or other provisions contained in any other general, special or local law.

*Id.* The General Assembly enacted Tennessee Code Annotated section 12-10-124 in 1995. This section provides, in part:

> (b) An authority in the operation, maintenance, and routine

repairs of a project may purchase goods, supplies and services which are generally sold to the public by advertised price without the necessity of competitive bidding; provided, that no purchase shall exceed five thousand dollars ($5,000.00) or any larger limit as shall be allowed for such purchases under the regulations of a municipal corporation with which the authority has contracted.

(c) An authority may contract for services by public invitation for proposals. Such contracts may be for a period of three (3) years. Professional services on "at-will" basis may be contracted by an interview process. Construction contracts for design-build or for remodeling and maintenance may be by public invitation for proposals as well as by competitive bid.

*Id.* § 12-10-124(b), (c) (Supp. 1994).

Shankle argues that Tennessee Code Annotated section 12-10-122 does not grant public building authorities plenary power such that they may completely disregard all laws including competitive bidding laws. It is Shankle's contention that any other interpretation would create a conflict between sections 12-10-122 and 12-10-124. Specifically, Shankle argues that the section 12-10-124(b) implies that public building authorities were subject to the competitive bidding laws when the Act was enacted, because it exempts certain activities from competitive bidding. Likewise, Shankle argues that section 12-10-124(c) is mere surplusage if section 12-10-122 exempts public building authorities from all restrictions. In other words, it is Shankle's argument that section 12-10-124(b) and (c) were unnecessary if the Act as enacted exempted public building authorities from laws such as competitive bidding statutes.

We can not agree. Shankle's arguments completely overlook the plain meaning of the language in section 12-10-122 and force a construction based on language added to the Act twenty-four years after its enactment. It is the opinion of this court that the plain language of sections 12-10-122 and 12-10-124 can be read together without conflict and without forcing any meaning.

Section 12-10-122 clearly exempts public building authorities from any other general, special, or local laws including competitive bidding laws; however, this exemption only applies to the acquisition, purchase, construction, reconstruction,

improvement, betterment, or extension of projects. Section 12-10-124(b), on the other hand, applies only to the operation, maintenance, and routine repairs of a project. It is the opinion of this court that these two sets of functions are separate and distinct.

Moreover, it is the opinion of this court that Shankle's implication argument is without merit. As previously stated, Shankle argued that it was unnecessary for the General Assembly to enact section 12-10-124(b) if public building authorities were already exempt from competitive bidding under section 12-10-122. The problem with this argument is that section 12-10-122 did not exempt public building authorities from other general, special, or local laws when it came to the operation, maintenance, or routine repairs of a project. It merely exempted them from competitive bidding laws when carrying out the functions listed in that section.

In addition, we can not agree with Shankle's argument as to section 12-10-124(c). It is the opinion of this court that section 12-10-124(c) simply sets forth permissible methods of obtaining certain services. The Assembly's use of "may" instead of "shall" clearly demonstrates that the subsection does not restrict the powers of the authorities. In addition, this interpretation complements and explains this court's reading of section 12-10-122. The subsection is not mere surplusage.

Throughout its arguments, Shankle extols the merits of competitive bidding in all government purchases. Nevertheless, the merits of competitive bidding is not an issue for this court; it is an issue for the General Assembly. In some circumstances, the General Assembly has recognized the appropriateness of the use of competitive bidding. In other cases, such as with the public building authorities, the Assembly has recognized the appropriateness of other methods. The determination of the more appropriate method is one for the General Assembly to make after considering all the relevant circumstances. We think that the purpose of the Act is clear, i.e., to provide counties, municipalities, and boards of education the means to accomplish goals that are not available directly to those entities. The Act empowers public building authorities with the ability to accomplish the purposes of the Act. The method chosen by the public building authority may include competitive bidding, interviews, or negotiations.

Shankle's third issue is "[w]hether local newspaper coverage within Bedford County satisfied the notice requirements of the competitive bidding laws and § 124(c) of the Public Building Authority Act, despite Defendants' admission that they did not publicly advertise or solicit for requests for proposals."

Tennessee Code Annotated section 12-10-122 empowers public building authorities to take actions with respect to projects without regard to the requirements of any other general, special, or local laws. It is the opinion of this court that the Authority was not bound by other competitive bidding statutes. In this case, the Act enabled the Authority to seek out contracts by methods other than by competitive bids. Thus, the Authority was not subject to the notice provisions of the competitive bidding statutes.

Shankle also argues that the first sentence of section 12-10-124(c) required the Authority to make a public invitation for proposals. Given our previous conclusions, we can not agree. The language of section 12-10-124(c) is permissive, i.e., it did not require the Authority to make a public invitation.

In view of our resolution of this matter, we need not discuss appellees' issue of whether Shankle's action is barred by laches. It results that the judgment of the trial court is in all things affirmed and the cause is remanded to the trial court for further necessary proceedings. Costs on appeal are assessed against plaintiff/appellant, J. Harold Shankle Company, Inc.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
WILLIAM C. KOCH, JR., J.

-9-