No. 71,496
No. 71,497
No. 71,504
No. 71,505

IN THE MATTER OF THE APPEALS OF COLORADO INTERSTATE GAS
COMPANY AND ANR PIPELINE COMPANY FROM DECISIONS OF
THE DIRECTOR OF PROPERTY VALUATION OF THE STATE OF
KANSAS FOR TAX YEARS 1992 AND 1993 (CONSOLIDATED).

(903 P.2d 154)

Opinion filed September 29, 1995.

*Richard D. Greene,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Karen L. Pauley,* of Colorado Interstate Gas Company, of Colorado Springs, Colorado; and *Thomas M. Malone* and *Stephen P. Schneider,* of ANR Pipeline Company, of Detroit, Michigan, were with him on the briefs for appellants.

*William E. Waters,* of Kansas Department of Revenue, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Colorado Interstate Gas Company (CIG) and ANR Pipeline Company (ANR) appeal from a dismissal by the Board of Tax Appeals (BOTA) of their claims that the State of Kansas discriminated against them in the valuation, assessment, and taxation of their real and personal property for the years 1992 and 1993. They contend that the failure of the Director of Property Valuation (DPV) to tax them in the same manner as other utilities, certain named railroads, violated the uniform and equal requirement of Art. 11, § 1 of the Kansas Constitution, the Equal Protection Clauses of the Kansas and United States Constitutions, and the Commerce Clause of the United States Constitution, and that BOTA erred in dismissing their claims without a hearing. We affirm in part, reverse in part, and remand for further hearing.

CIG and ANR contend that BOTA's dismissal of their tax appeals for 1992 and 1993 without a hearing denied them due process of law. They argue that BOTA erred in not granting them a due process hearing upon the mistaken belief the 1992 and 1993 appeals were controlled by *In re Tax Appeal of ANR Pipeline Co.,* 254 Kan. 534, 866 P.2d 1060, *cert. denied* 513 U.S. 917 (1994). They contend that their tax appeals raise issues not addressed in *ANR Pipeline* and that *ANR Pipeline* has been effectively overruled by the decision of the United States Supreme Court in *Department of Revenue of Oregon v. ACF Industries, Inc.,* 510 U.S. 332, 127 L. Ed. 2d 165, 114 S. Ct. 843 (1994).

CIG and ANR were party plaintiffs in the *ANR Pipeline* case. They, together with other utilities, appealed from a BOTA order affirming the decisions of the DPV for the tax years 1990 and 1991. The argument advanced in *ANR Pipeline* and rejected by this court was that the pipeline utilities were entitled to the same assessment rate given to certain railroads pursuant to a consent decree entered in *Burlington Northern Railroad Company v. Rolfs,* D. Kan., No. 89-4124-R, filed August 11, 1989. As noted in *ANR Pipeline*:

"The effect of [the consent] decree was to fix the railroads' assessment rate for real property at 25 percent for 1990 and 22.3 percent for 1991. The parties have stipulated that 80 percent of the railroads' personal property was exempted from

taxation with the balance of 20 percent to be assessed at 30 percent of the value. Like BOTA, we are at a loss from the record to see the basis for this exemption, but accept the parties' stipulation for the purposes of this appeal." 245 Kan. at 538.

The assessment rate for the real and personal property of public utilities in Kansas during 1990 and 1991 was closer to a 30% rate. Under the terms of the consent decree, the railroads were treated differently than other public utilities and were being taxed at a rate that the State taxed commercial or industrial property. The question we faced and resolved in *ANR Pipeline* was whether the Railroad Revitalization & Regulatory Reform Act of 1976 (Pub. L. 94-210, 90 Stat. 31, 54-5 [codified at 49 U.S.C. § 11503 (1988)]), commonly referred to as the 4-R Act, preempted Kansas law which assessed railroad property at a rate greater than commercial or industrial property. We held:

"The 4-R Act, as it applies to Kansas and as reflected in the consent decree, simply required that railroad property be assessed at no higher rate than commercial or industrial property. Railroad property was thereby made an exception to subclasses to which public utility property was assigned. . . .

. . . .

"[T]he 4-R Act placed limitations on state taxation of railroad property. Railroad property had to be treated the same as 'other commercial and industrial property.' There can be little doubt that this is a preemption. If it is not a preemption, the 4-R Act is just a piece of paper suggesting railroads should be treated like other commercial and industrial property and the enforcement section thereof is surplusage. Clearly, that was not the Congressional intent in enacting the 4-R Act." 254 Kan. at 541-43.

Three days after this court decided *ANR Pipeline*, the United States Supreme Court decided the case of *Department of Revenue of Oregon v. ACF Industries, Inc.*, 510 U.S. 332. The State of Oregon imposed an ad valorem tax upon all real and personal property within the jurisdiction except property granted an express exemption and subjected all nonexempt property to assessment and taxation in equal and ratable proportion. Oregon also exempted various property classes, including some classes of business personal property. Several companies leased railroad cars to railroads and shippers and under Oregon tax law, these cars were considered nonexempt property. The companies concerned brought suit un-

der the 4-R Act against Oregon, claiming that the state's property tax violated § 11503(b)(4) of the 4-R Act by exempting certain classes of commercial and industrial property while taxing railroad cars in full. The Court concluded "that § 11503, which expresses Congress' resolution of the matter, does not limit the States' discretion to exempt nonrailroad property, but not railroad property, from ad valorem property taxes of general application." 127 L. Ed. 2d at 178. The Court further concluded that a state may grant exemptions from a generally applicable ad valorem property tax without exposing the taxation of railroad property to invalidation under subsection (b)(4). 127 L. Ed. 2d at 173.

While the litigation in *ANR Pipeline* was being conducted before this court, and prior to the time *ACF Industries* was decided by the United States Supreme Court, the events which provide the basis for this appeal occurred. In a continuation of the negotiated settlement, the DPV and the named railroads entered into consent decrees regarding the 1992 and 1993 tax years. See *Burlington Northern Railroad Company v. Beshears*, D. Kan., No. 92-4120-C, filed June 1, 1992; *Burlington Northern Railroad Company v. Parrish*, D. Kan., No. 93-4119-DES, filed May 21, 1993. CIG and ANR filed notices of appeal from the DPV to BOTA for the tax years 1992 and 1993. The 1992 notices of appeal reference the notices of appeal in *ANR Pipeline* and state:

"1. Taxpayer was assessed and taxed differently than other entities meeting the definition of a public utility, as defined in K.S.A. § 79-5a01, in violation of the Constitutions of the United States and of the State of Kansas which provide for fair, equal and uniform treatment under the laws.

"2. Taxpayer was assessed and taxed differently than other entities meeting the definition of a public utility in violation of the United States Constitution which prohibits the creation of undue burdens on interstate commerce.

"3. Taxpayer does not accept the assessed value as stated in the referenced decision.

"WHEREFORE, Taxpayer requests the Board to conduct a hearing pursuant to K.S.A. § 74-2438, to find that Taxpayer is entitled to be assessed uniformly and equally; to adjust its Kansas assessed value to reflect fair, uniform, and equal treatment; to adjust its Kansas assessed value in order to avoid undue burdens on interstate commerce; to recertify or order a recertification of Taxpayer's Kansas Assessed Value; or, in the event that recertification is untimely, to order a refund calculated accordingly."

The 1993 notices of appeal simply state that

"[CIG and ANR give] notice of appeal of the decision or final action of the Director of Property Valuation dated June 11, 1993 (DPV ID No. G902) to the extent that Taxpayer was assessed, valued and taxed differently than (1) other entities meeting the definition of a public utility, as defined in K.S.A. 79-5a01; and (2) entities defined as commercial and industrial which is in violation of the constitutions of the United States and of the State of Kansas.

"WHEREFORE, Taxpayer requests the Board to conduct a hearing pursuant to K.S.A. § 74-2438, to find that Taxpayer is entitled to be assessed uniformly and equally; to adjust its Kansas assessed value to reflect fair, uniform, and equal treatment among members of the same subclass; to adjust its Kansas assessed value to reflect fair and equal treatment among similarly situated taxpayers; to adjust its Kansas assessed value in order to avoid undue burdens on interstate commerce; to recertify or order a recertification of Taxpayer's Kansas assessed value; or, in the event that recertification is untimely, to order a refund calculated accordingly."

For the 1992 tax year only, the parties stipulated to a set of facts. On February 7, 1994, without holding a hearing on any of the appeals, BOTA filed its decision in all the matters. BOTA found that appellants were asking to be afforded the same favorable tax treatment as railroads and that this issue had already been decided in *ANR Pipeline*. As a result, BOTA denied appellants' appeals.

Appellants filed motions for reconsideration for the 1992 tax year, arguing that *ANR Pipeline* was not a final case, as a motion for rehearing had been filed. Appellants also argued that even if the Kansas Supreme Court denied rehearing, a petition for writ of *certiorari* would be filed in the United States Supreme Court and the decision should be stayed until such a time as that had been decided. Appellants further contended that *ACF Industries* had effectively overruled *ANR Pipeline* and that BOTA should reopen the case in light of that ruling. It should be noted that this court denied appellants' motions for reconsideration in *ANR Pipeline* and the United States Supreme Court denied appellants' petition for writ of *certiorari*.

Appellants also filed motions for reconsideration for the 1993 tax year. In these motions, appellants alleged that BOTA had failed to recognize the other issues they were raising that had nothing to do with the decision in *ANR Pipeline*, specifically, questions con-

cerning a 1992 amendment to the Kansas Constitution as well as the assessment and taxation figures for 1993. The motions also recited issues concerning the purported conflict between *ANR Pipeline* and *ACF Industries.*

In rulings dated March 11, 1994, BOTA stated that *ACF Industries* did not overrule *ANR Pipeline* and that appellants had not proffered any new evidence which would warrant an evidentiary hearing on the matter. Accordingly, BOTA denied appellants' motions for reconsideration in all cases.

Appellants contend that *ACF Industries* overruled in part our decision in *ANR Pipeline* and that this fact must be considered by BOTA for the tax years 1992 and 1993. Specifically, appellants argue that the United States Supreme Court in *ACF Industries* virtually removed tax *exemptions* granted by states from consideration under the 4-R Act. Since the consent decrees granted the named railroads an 80% tax exemption of their Kansas personalty for the years 1992 and 1993 with the expressed intent to "eliminate ad valorem tax discrimination against plaintiffs' personalty in the State of Kansas" in accord with the provisions of the 4-R Act, and since the same 80% exemption was not granted to appellants herein, also public utilities, appellants argue that the difference in treatment discriminated against them. Appellants contend that this issue was never addressed and a hearing before BOTA must be granted to assess the impact of *ACF Industries* on *ANR Pipeline.*

*ANR Pipeline* involved a question of federal preemption under the 4-R Act. *ANR Pipeline* did not directly address the question of exemptions. The issue, as framed by the parties under the stipulated facts, did not involve the question of whether the 4-R Act applied to an exemption granted under state law. Instead, *ANR Pipeline* addressed the broader question of whether the 4-R Act preempted the state statutory taxation scheme. None of the parties to *ANR Pipeline* addressed the issue of exemptions, nor did we address such an issue. *AFC Industries*, however, dealt with the precise issue of whether the 4-R Act applied to exemptions from ad valorem taxes granted under state law.

Our holding in *ANR Pipeline*, because it did not directly address the issue of exemptions, does not provide a basis for the BOTA

decision to deny a hearing for the tax years 1992 and 1993 upon the issue of the 80% exemption. BOTA mistakenly applied *ANR Pipeline* to the exemption issue raised by appellants for the 1992 and 1993 tax years. However, this mistake does not require a remand because the 80% exemptions for 1992 and 1993 were the direct result of a negotiated settlement between litigants in a protracted complex civil action. We conclude, consistent with our analysis below, that the basis for such exemptions was not discriminatory.

The contention that the consent decrees are without any basis in federal law and, therefore, result in discriminatory treatment of CIG and ANR, fails to take into consideration the nature of the consent decrees. In the consent decrees for the years in question, the railroads and the DPV agreed that the named railroads would be granted an 80% exemption for their personal property taxes. This provision was incorporated at the insistence of the named railroads because 80% of the total aggregate commercial and industrial personal property in the state was tax exempt and the named railroads felt that this was discriminatory and contrary to the 4-R Act, which mandates that railroads be taxed at a rate no greater than that which applies to commercial and industrial property. As pointed out by the DPV in its brief, at the time the 1992 and 1993 consent decrees were entered into, every court that had addressed the issue had held that state property tax exemptions given to locally assessed commercial and industrial personal property, and not given to state assessed railroads, violated subsection (b)(4) of the 4-R Act. However, under the terms of the consent decrees, the remaining railroad personal property was taxed at the public utility rate of approximately 30% instead of the commercial and industrial rate of 20%. The consent decrees were negotiated settlements between the parties.

We may not ignore the protracted federal litigation between the named railroads and the State through the DPV. We acknowledge that the consent decrees represent negotiated settlements based upon the then-existing state of the law as well as the strengths and weaknesses of the parties to the litigation. While the named railroads were treated differently than other public utilities in Kansas,

this difference in treatment was not based upon a purposely designed discriminatory scheme but rather upon the numerous factors involved in the settlement of complex, difficult, and expensive litigation.

The consent decrees applied only to the parties in the litigation. The settlement was arrived at through an assessment of a myriad of options available to the parties. While the granting of the 80% personal property tax exemption may have been based upon the belief that the 4-R Act required it, a belief that may be false in light of the United States Supreme Court's decision in *ACF Industries*, the settlement represents a cost-benefit analysis of continued litigation through federal trial and appellate courts, including, possibly, an appeal to the United States Supreme Court and the collection of personal and real property taxes without continued litigation. The settlement of a lawsuit is a complex process, one that the law encourages and one that is dependent upon many factors including the skill and knowledge of the attorneys involved, the present state of the law, the relative strengths and weaknesses of the parties to the litigation, and the financial abilities of the parties.

Given the number of factors involved in such a process, we are not prepared to state that the granting of the 80% personal property tax exemption to the named railroads in protracted federal litigation, as part of a negotiated settlement, discriminated against the CIG and ANR. While it is clear that the named railroads were treated differently, this treatment had nothing to do with discrimination and everything to do with the settlement of a lawsuit.

The tax discrimination issue for the years 1992 and 1993 involved a question of law with no genuine issue of material fact remaining. BOTA was able to address this issue without a hearing. BOTA reached the right result in dismissing the appeals on this issue even though it based its decision upon the wrong grounds, *viz.*, *ANR Pipeline*. Under these circumstances, we are able to affirm under the principle that a decision which reaches the right result will be upheld even though the tribunal may have relied upon the wrong ground or assigned erroneous reasons for its decision. See *Bank of Kansas v. Davison*, 253 Kan. 780, 792, 861 P.2d 806 (1993).

Appellants, nevertheless, contend that BOTA's refusal to grant a hearing for either the 1992 or 1993 tax appeals denied them due process of law. Appeals to BOTA are governed by K.S.A. 74-2438, which provides that "[u]pon receipt of a timely appeal, the board shall conduct a hearing in accordance with the provisions of the Kansas administrative procedure act. The hearing before the board shall be a de novo hearing unless the parties agree to submit the case on the record made before the director." The Kansas Administrative Procedure Act sets forth the rules of the formal hearing. It notes that parties may have a prehearing conference and shall, at appropriate stages of the proceeding, give all parties a full opportunity to file pleadings, motions, and objections. K.S.A. 77-516; K.S.A. 77-519. Regarding the hearing itself, K.S.A. 77-523(b) states:

"To the extent necessary for full disclosure of all relevant facts and issues, the presiding officer shall afford to all parties the opportunity to respond, present evidence and argument, conduct cross-examination and submit rebuttal evidence, except as restricted by a limited grant of intervention or by the prehearing order."

Under these statutes, BOTA is required to hold a hearing. K.S.A. 74-2438 uses the word "shall," which indicates that a hearing is mandatory. However, K.S.A. 74-2438 states that the hearing is de novo "unless the parties agree to submit the case on the record made before the director." As a result, parties may waive their right to a de novo hearing by submitting the case to BOTA on the record. Moreover, where the parties to a BOTA appeal have entered into a stipulation concerning all material fact with only questions of law remaining, or where the matters on appeal are questions of law with no genuine material fact questions remaining, BOTA may dispose of the appeal on the record without a hearing.

The sole question raised by appellants in their 1992 appeals was their claim that they were being treated differently for tax purposes than other public utility railroads. Their 1992 appeals referenced their 1990 and 1991 appeals finally disposed of by this court in *ANR Pipeline.* This tax discrimination claim was the only issue raised by appellants in their 1992 appeals and was one of the issues raised in the 1993 appeals. This issue involved a question of law,

with no genuine material fact issue remaining. We affirm BOTA's dismissal of this issue on appeal without hearing, even though BOTA assigned erroneous reasons for its decision, because the right result was reached.

In addition to the tax discrimination issue, the notices of appeal for 1993 raise other issues which require us to remand to BOTA for further proceedings. The 1993 notices do not reference the earlier tax appeals. The parties did not enter into a stipulation of fact for 1993 as they had done for 1992. The 1993 appeals state only that appellants appeal the decision of the DPV to the extent that they were assessed differently than other public utilities or other entities defined as commercial and industrial businesses. This language is broad enough to encompass their claims that the 1992 Kansas constitutional amendment taxing pipeline inventories violates equal protection, that ad valorem taxation of the intangible personal property of utilities is discriminatory, and that the DPV used an erroneous allocation method that discriminated against them.

In the event of a remand, appellants ask us to resolve two issues which they claim will expedite further proceedings before BOTA. The first issue concerns the effect the United States Supreme Court's decision in *ACF Industries* has on our decision in *ANR Pipeline.* We have addressed this issue above. Appellants also ask this court to determine whether intangible personal property is properly subject to ad valorem tax in Kansas. This issue was never addressed by BOTA because appellants' 1993 appeals were dismissed without a hearing.

We decline to reach this issue. BOTA is an administrative tribunal established by law to determine controversies relating to assessments of property for ad valorem tax purposes. See *Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, 342, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972). This issue is within BOTA's area of expertise, and BOTA should be given a chance to address it. BOTA's decision denying appellants' 1992 tax appeals is affirmed. That part of BOTA's decision regarding disparate tax treatment for the year 1993 is also affirmed. However, the remaining questions

raised by appellants for the 1993 tax year are remanded for further proceedings before BOTA.

Affirmed in part, reversed in part, and remanded.

ABBOTT and LARSON, JJ., not participating.

MARVIN W. MEYER, Judge Retired, assigned.