No. 85,052

COLORADO INTERSTATE GAS COMPANY and ANR PIPELINE COMPANY, *Appellants*, v. MARK BESHEARS, Secretary of Revenue, *et al.*, *Appellees.*

(24 P.3d 113)

Opinion filed June 1, 2001.

*Richard D. Greene*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Karen L. Pauley*, of Colorado Interstate Gas Company, of Colorado Springs, Colorado, was with him on the briefs for appellant.

*William E. Waters*, of the Kansas Department of Revenue, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

Davis, J.: Colorado Interstate Gas Company and ANR Pipeline Company (the Pipelines) appeal from a decision of the district court granting summary judgment in favor of defendants Mark Beshears, Secretary of Revenue; David C. Cunningham, Director of the Division of Property Valuation (DPV); and the Department of Revenue of the State of Kansas (Department) in an action where the Pipelines alleged that the preferential tax treatment afforded railroads in Kansas but denied to the Pipelines violated Article 11, § 1 of the Kansas Constitution, K.S.A. 79-1439, the Equal Protection Clauses of the United States and Kansas Constitutions, and the Commerce Clause of the United States Constitution.

The procedural history of this case is lengthy and complex. The factual scenario underlying the issue to be resolved has been twice before this court and twice before the Kansas Court of Appeals. See *In re Tax Appeal of Colorado Interstate Gas Co.*, 258 Kan. 310, 903 P.2d 154 (1995); *In re Tax Appeal of ANR Pipeline Co.*, 254 Kan. 534, 866 P.2d 1060, *cert. denied* 513 U.S. 917 (1994); *Colorado Interstate Gas Co. v. Beshears*, No. 77,225, unpublished opinion filed February 13, 1998; *Colorado Interstate Gas Co. v. Beshears*, 18 Kan. App. 2d 814, 860 P.2d 56 (1993), *rev. denied* 256 Kan. 994 (1994). Collateral issues have also been addressed in federal court. See *ANR Pipeline Co. v. LaFaver*, 150 F.3d 1178 (10th Cir. 1998).

The case we now consider initially involved tax years 1989, 1990, and 1991. For the years in question, the Pipelines and railroads together with railroad corporations were classified as "public utilities" for purposes of ad valorem taxation in Kansas. During this time, public utility property was assessed at 30% of value. Kan. Const., art. 11, § 1(b) (1992 amendment not applicable).

In 1976, Congress enacted the Railroad Revitalization & Regulatory Reform Act of 1976, codified at 49 U.S.C. § 11503 (1988). This Act is commonly referred to as the 4-R Act. The purpose of the 4-R Act was to prohibit discriminatory taxation of railroad real and personal property by state and local property tax laws. *In re Tax Appeal of ANR Pipeline Co.*, 254 Kan. at 537-38. After years

of federal litigation in which certain railroads attempted to use the 4-R Act to reduce their real and personal property taxes in Kansas, the Department entered into a series of consent decrees in federal court with those railroads. Under the terms of the consent decrees, the Department acknowledged that it assessed 100% of the railroad's personal property while exempting 80% of commercial and industrial personal property which resulted in disparate treatment and, according to the Department's interpretation, violated the provisions of the 4-R Act. Therefore, under the terms of the consent decrees, the complaining railroads were granted an 80% personal property tax exemption—the same exemption allowed for commercial and industrial personal property. The Pipelines were not permitted the same 80% tax exemption, which, according to the Pipelines, discriminated against them as "public utilities."

The Pipelines filed the case we now consider in Shawnee County District Court in 1992, asking that their property be equalized with that of the railroads for the 1989, 1990, and 1991 tax years. The Pipelines contended that the preferential treatment afforded the railroads through the consent decrees violated the Kansas Constitution and state law, the Equal Protection Clauses of the United States and Kansas Constitutions, and the Commerce Clause of the United States Constitution. The Pipelines also took steps to appeal their 1990 and 1991 valuations through the Board of Tax Appeals (BOTA).

On January 25, 1993, the district court dismissed this case, finding that the Pipelines had failed to exhaust their administrative remedies. The Pipelines appealed the dismissal to the Court of Appeals which reversed the district court. *Colorado Interstate Gas Co. v. Beshears*, 18 Kan. App. 2d at 822. The Court of Appeals determined that no administrative procedure existed for the Pipelines' claim for the 1989 tax year because the consent decree which was the cause of the alleged discrimination was not effective until after the expiration of the Pipelines' administrative rights to appeal their valuation. The Court of Appeals ruled that the district court, therefore, erred in dismissing for failure to exhaust administrative remedies. 18 Kan. App. 2d at 821-22. The Court of Appeals further reversed the dismissal of the claims for the 1990 and 1991 tax years

and ordered them stayed pending a determination by the Supreme Court for the 1990 and 1991 tax years. 18 Kan. App. 2d at 822.

Upon completion of the administrative proceedings for the 1990 and 1991 tax years, BOTA upheld the decision of the DPV, which the Pipelines appealed. On appeal, the Pipelines argued that the BOTA order violated the uniform and equal requirement of Article. 11, § 1 of the Kansas Constitution, the Equal Protection Clauses of the Kansas and United States Constitutions, and the Commerce Clause of the United States Constitution. *In re Tax Appeal of ANR Pipeline Co.*, 254 Kan. at 535.

On January 21, 1994, this court filed its opinion in *In re Tax Appeal of ANR Pipeline Co.*, which affirmed the BOTA order for the 1990 and 1991 tax years. 254 Kan. at 548. We held that the 4-R Act preempted Kansas' classification for public utility property and that the preferential treatment given railroads was mandated by the 4-R Act and did not violate Article. 11, § 1 of the Kansas Constitution, equal protection under either the United States or Kansas Constitutions or the Commerce Clause. 254 Kan. at 539-48.

Three days after our decision in *In re Tax Appeal of ANR Pipeline Co.*, the United States Supreme Court filed its decision concerning state property tax exemptions for railroads under the 4-R Act. See *Department of Revenue of Ore. v. ACF*, 510 U.S. 332, 127 L. Ed. 2d 165, 114 S. Ct. 843 (1994). In *ACF Industries*, the Court found that the 4-R Act did not prevent states from granting exemptions to nonrailroad property but not to railroad property. 510 U.S. at 340. The Court stated:

"Because property 'subject to a property tax levy' means property that is taxed, the definition of commercial and industrial property' excludes property that is exempt. Exempt property, then, is not part of the comparison class against which discrimination is measured under subsections [Railroad Revitalization and Regulatory Reform Act of 1976 (4-R Act) Pub. L. 94-210, 90 Stat. 31, 49 U.S.C. § 11503] (b)(1)-(3), and it follows that railroads may not challenge property tax exemptions under those provisions." 510 U.S. at 342.

Based on this decision, the Pipelines filed a motion for rehearing in *In re Tax Appeal of ANR Pipeline Co.*, which this court denied. The Pipelines then filed a petition for writ of *certiorari* with the

United States Supreme Court, which was also denied. *ANR Pipeline Co. v. Director of Property Valuation*, 513 U.S. 917, 130 L. Ed. 2d 209, 115 S. Ct. 296 (1994).

At the same time in the above litigation, the Pipelines pursued virtually identical claims of discrimination before BOTA for tax years 1992 and 1993. BOTA dismissed their claims, ruling that it was bound by the decision in *In re Tax Appeal of ANR Pipeline Co.* The Pipelines appealed to this court. See *In re Tax Appeal of Colorado Interstate Gas Co.*, 258 Kan. 310. The issues raised by the Pipelines were identical to the issues raised for the years 1989, 1990, and 1991:

"[The Pipelines] contend [for the years 1992 and 1993] that the failure of the Director of Property Valuation (DPV) to tax them in the same manner as other utilities, certain named railroads, violated the uniform and equal requirement of Art. 11, § 1 of the Kansas Constitution, the Equal Protection Clauses of the Kansas and United States Constitutions, and the Commerce Clause of the United States Constitution, and that Board of Tax Appeals erred in dismissing their claims without a hearing." 258 Kan. at 311.

Upon our consideration of the Pipelines' claims, we held that even though the United States Supreme Court in *ACF Industries* undermined our decision in *In re Tax Appeal of ANR Pipeline Co.*, the granting of the 80% exemption to the railroads and not to the Pipelines was not discriminatory. 258 Kan. at 316-317. In reaching this determination we stated:

"The contention that the consent decrees are without any basis in federal law and, therefore, result in discriminatory treatment of [the Pipelines] fails to take into consideration the nature of the consent decrees. In the consent decrees for the years in question, the railroads and the DPV agreed that the named railroads would be granted an 80% exemption for their personal property taxes. This provision was incorporated at the insistence of the named railroads because 80% of the total aggregate commercial and industrial personal property in the state was tax exempt and the named railroads felt that this was discriminatory and contrary to the 4-R Act, which mandates that railroads be taxed at a rate no greater than that which applies to commercial and industrial property. As pointed out by the DPV in its brief, at the time the 1992 and 1993 consent decrees were entered into, every court that had addressed the issue had held that state property tax exemptions given to locally assessed commercial and industrial personal property, and not given to state assessed railroads, violated subsection (b)(4) of the 4-R Act. However, under the terms of the consent decrees, the remaining railroad personal

property was taxed at the public utility rate of approximately 30% instead of the commercial and industrial rate of 20%. The consent decrees were negotiated settlements between the parties.

"We may not ignore the protracted federal litigation between the named railroads and the State through the DPV. We acknowledge that the consent decrees represent negotiated settlements based upon the then-existing state of the law as well as the strengths and weaknesses of the parties to the litigation. While the named railroads were treated differently than other public utilities in Kansas, this difference in treatment was not based upon a purposely designed discriminatory scheme but rather upon the numerous factors involved in the settlement of complex, difficult and expensive litigation.

"The consent decrees applied only to the parties in the litigation. The settlement was arrived at through an assessment of a myriad of options available to the parties. While the granting of the 80% personal property tax exemption may have been based upon the belief that the 4-R Act required it, a belief that may be false in light of the United States Supreme Court's decision in *ACF Industries*, the settlement represents a cost-benefit analysis of continued litigation through federal trial and appellate courts, including, possibly, an appeal to the United States Supreme Court and the collection of personal and real property taxes without continued litigation. The settlement of a lawsuit is a complex process, one that the law encourages and one that is dependent upon many factors including the skill and knowledge of the attorneys involved, the present state of the law, the relative strengths and weaknesses of the parties to the litigation, and the financial abilities of the parties.

"Given the number of factors involved in such a process, we are not prepared to state that the granting of the 80% personal property tax exemption to the named railroads in protracted federal litigation, as part of a negotiated settlement, discriminated against [the Pipelines]. While it is clear that the named railroads were treated differently, this treatment had nothing to do with discrimination and everything to do with the settlement of a lawsuit." 258 Kan. at 316-17.

The Pipelines did not petition the United States Supreme Court for a writ of *certiorari* but instead filed an action in federal district court against the Department of Revenue, its officials, and the counties in which the Pipelines were taxed. See *ANR Pipeline Co. v. LaFaver*, 150 F.3d 1178, 1186 (1998). The federal district court held in an unpublished opinion, *ANR v. LaFaver*, (D. Kan. No. 96-1089) (1996), that the Pipelines were entitled to bring suit in federal court because the Kansas Supreme Court had failed to decide the constitutional issues raised by the Pipelines and in essence " 'terminated [the claims] without any consideration.' " 150 F.3d at 1186. The United States Tenth Circuit Court of Appeals, how-

ever, disagreed, noting that "[a]lthough the pipelines did not persuade the Kansas courts to give them the relief they sought, they did have the opportunity to raise all their constitutional claims, and in fact they availed themselves of such opportunities." 150 F.3d at 1192. Ultimately, the Tenth Circuit found that the state defendants were entitled to sovereign immunity in federal court and reversed the federal district court's ruling. 150 F.3d at 1194-95.

In the meantime, the 1989 tax appeal which makes up the case we now consider was back in Shawnee County District court as the result of the Kansas Court of Appeals' decision in *Colorado Interstate Gas Co. v. Beshears*, 18 Kan. App. 2d at 821-22. The defendants immediately filed a motion for summary judgment arguing that the constitutional issues raised had been settled by this court's decision in *In re Tax Appeal of Colorado Interstate Gas Co.* The Pipelines filed a motion to extend the deadline to reply pending the outcome of their federal litigation. The district court, however, denied the motion to extend the deadline and awarded summary judgment to the defendants. The Pipelines again appealed to the Kansas Court of Appeals, which reversed the district court in an unpublished opinion. *Colorado Interstate Gas Co. v. Beshears*, No. 77,225, unpublished opinion filed February 13, 1998. The Court of Appeals found that it was error for the district court to have decided the case while the federal court case was still outstanding and without allowing the Pipelines an opportunity to respond to the summary judgment motion after the motion to stay was denied. The Court of Appeals remanded the matter with directions to the district court to conduct a "meaningful inquiry as to whether Taxpayers have stated colorable constitutional claims."

After remand to the district court, the defendants once again filed a motion for summary judgment. This time, the Pipelines filed a response, and a hearing was held on the motion. On February 17, 2000, the district court issued a memorandum opinion granting summary judgment in favor of the defendants. The district court first held that the Pipelines' tax claims for 1990 and 1991 were completely resolved in *In re Tax Appeal of ANR Pipeline Co.* and, thus, were not at issue. The district court then held that while it was unclear whether the Pipelines were attempting to assert other

claims in addition to their constitutional ones regarding the 80% exemption for the 1989 tax year, any such claims would be time barred. The district court then addressed the constitutional claims for the 1989 tax year. It determined that the Pipelines' claims for discrimination failed for two reasons. First, the district court held that the Pipelines had suffered no discrimination because their assessment had remained unchanged even though the railroads had gotten a tax exemption. Second, the district court held that *In re Tax Appeal of ANR Pipeline Co.* and *In re Tax Appeal of Colorado Interstate Gas Co.* settled the constitutional issues and should be given controlling effect.

The controlling issue in resolving this case is whether, for either of the district court's reasons, summary judgment was appropriate. If so, we must affirm, but if not, we must reverse and remand. The Pipelines advance a variety of issues and subissues, many of which overlap and repeat. From our analysis of the Pipelines' contentions, we identify the following four issues: (1) What issues must be resolved in this appeal; (2) did the district court comply with the Kansas Court of Appeals' remand directions to conduct a "meaningful inquiry as to whether Taxpayers have stated colorable constitutional claims" in *Colorado Interstate Gas Co. v. Beshears*, No. 77,225; (3) did the district court correctly find that no material facts were in dispute; and (4) was *In Re Tax Appeal of Colorado Interstate Gas Co.*, correctly decided and is that case determinative of this case. Our jurisdiction is based upon this court's transfer pursuant to K.S.A. 20-3017.

(1) What issues must be resolved in this appeal?

The Pipelines' 1992 petition filed in Shawnee County District Court involved the claim of disparate tax treatment for the 1989, 1990, and 1991 tax years. After the first trip to the Court of Appeals in *Colorado Interstate Gas Co. v. Beshears*, the case was remanded to the district court with instructions to hear the 1989 tax appeal and to stay the appeal for 1990 and 1991 tax years pending this court's decision in *In re Tax Appeal of ANR Pipeline Co.* See 18 Kan. App. 2d at 822. Our decision in *In re Tax Appeal of ANR Pipeline Co.*, fully addressed the issues pending for the 1990 and

1991 tax years. 254 Kan. at 534-548. The Pipelines' motion for rehearing was denied by this court and their petition for writ of *certiorari* to the United States Supreme Court was denie. Thus, the district court properly concluded that res judicata applied to the 1990 and 1991 tax years, leaving only the 1989 tax year at issue.

In their reply to the defendants' motion for summary judgment, the Pipelines also vaguely referred to other possible issues not arising from the 1989 consent decree. These issues center around possible assessment irregularities with regard to fair market value of the Pipelines' property. The district court found that these issues were also not a part of this case as they were barred by the failure to follow administrative procedures contained in K.S.A. 74-2438 and K.S.A. 79-5a05. This holding is also correct, and the Pipelines do not specifically dispute it. The sole reason that the Court of Appeals found that the Pipelines did not have to exhaust administrative remedies with regard to the 1989 tax year was that the consent decree which was the cause of the alleged discrimination was not filed until after the expiration of the Pipelines' right to administratively challenge their 1989 valuations. See *In re Tax Appeal of ANR Pipeline Co.*, 18 Kan. App. 2d at 821-22. The same is not true with regard to other issues not involving the consent decree. These issues are subject to K.S.A. 2000 Supp. 74-2438 and K.S.A. 79-5a05, and should have been raised administratively.

Thus, the sole issue in this case involves the question of whether the 1989 consent decree which gave the railroad plaintiffs an 80% personal property tax exemption discriminated against the Pipelines.

(2) Did the district court comply with the Kansas Court of Appeals' remand directions to conduct a meaningful inquiry as to whether Taxpayers stated colorable constitutional claims in *Colorado Interstate Gas Co. v. Beshears*, No. 77,225?

The Pipelines contend that the district court ignored remand directions from the Kansas Court of Appeals that there be a "meaningful inquiry" as to whether the Pipelines have stated colorable claims. The Pipelines argue that the "meaningful inquiry" directed

by the Court of Appeals precluded an award of summary judgment at this stage of the proceedings.

In support of their contention, the Pipelines assert that the district court itself "surprisingly admitted" that it was "completely unaware" of the Court of Appeals' decision and mandate. The Pipelines quote language from the district court's decision:

"In a second appeal to the Kansas Court of Appeals, the appellate court again reversed the district court, although we have no indication in the record before us of the basis of that unpublished decision or its instructions to the lower court."

However, a closer look at the district court's decision shows that the Pipelines' assertion is incorrect. While the quoted language is certainly in the district court's decision, it is not a statement by the district court that it was itself unaware of the basis of the decision. Rather, the language is contained in a direct quote by the district court of the Tenth Circuit Court of Appeals in *ANR Pipeline v. LaFaver*, 150 F.3d at 1186. The district court quoted the entire background section of the *ANR Pipeline v. LaFaver* opinion as a way of detailing the procedural history of the case. Thus, the Pipelines have no basis in fact and misrepresent the true facts.

In order to understand what the Court of Appeals meant by its remand ordering a "meaningful inquiry," it is necessary to look at the circumstances which faced the Court of Appeals when it reversed the previous grant of summary judgment. In the previous grant of summary judgment, the district court granted judgment immediately after denying the Pipelines additional time in which to respond to the defendants' motion. Judgment was granted without the Pipelines' response to the motion and without a hearing on the motion at which the Pipelines could present their side of the issue. The Court of Appeals decision should therefore not be taken as a prohibition on the award of summary judgment but rather as a mandate that the Pipelines be given, at a minimum, an opportunity to respond. Upon remand, the Pipelines were granted an opportunity to respond to the summary judgment motion raised by the defendants and, in fact, did so. A hearing was held on the motion, after which summary judgment was awarded.

The Pipelines also argue that discovery had not begun on their claims and that summary judgment should have been prohibited by that fact. It is true that summary judgment should ordinarily not be granted when discovery is incomplete. *Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson*, 250 Kan. 490, 498, 827 P.2d 758 (1992). However, if the facts pertinent to the material issues are not controverted, summary judgment may be appropriate even when discovery is not finished.

Under the circumstances outlined above, we conclude that mandate of the Court of Appeals required no greater consideration by the district court than that given.

### (3) Did the district court correctly find that no material facts were in dispute?

The Pipelines also argue that the district court erred in awarding summary judgment because there were material facts in dispute. They contend that the outstanding material facts made summary judgment inappropriate.

We have held:

"Summary judgment is appropriate when the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusion drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

The defendants' motion for summary judgment sets forth 29 paragraphs of allegedly uncontroverted facts. In their response, the Pipelines attempted to controvert five of these paragraphs. However, none of these controversies are of fact; rather, the Pipelines instead disagreed as to the legal scope of various court decisions. The Pipelines also set forth 11 paragraphs of what they contend

are "Additional Material Facts." Fact A restates the Court of Appeals' holding in *Colorado Interstate Gas Co. v. Beshears*. Fact B restates the contention that *In re Tax Appeal of Colorado Interstate Gas Co.*, was decided without due process. Similarly, Fact C restates DPV's arguments in that case, and Fact D notes that the Court of Appeals reversed and remanded the case. Fact E restates the Court of Appeals' rationale, and Fact F restates the decision of the Tenth Circuit Court of Appeals in *ANR Pipeline v. LaFaver*. Fact G states that neither party had been allowed to conduct discovery to determine whether the consent decree was discriminatory. Fact H restates the terms of the consent decree in 1989. Fact I states that subsequent studies have determined that commercial and industrial taxpayers in Kansas have been assessed below market value. Fact K argues that this assessment, as well as the exemption granted by the consent decree, violates the Pipelines' rights.

We agree with the district court's determination that the case was ripe for summary judgment, and we conclude that none of these purported controverted facts or additional facts were material or prevented summary judgment from being entered. The only fact that may have been material dealt with the Pipelines' assertion regarding assessment of commercial and industrial taxpayers below market value. However, as explained above, this issue does not pertain to the 1989 consent decree and, thus, cannot now be raised.

In their brief before this court the Pipelines argue for the first time that there are genuine issues of fact as to whether the consent decree was truly entered into in good faith and whether the mistake of law was truly a mistake as well as the impact of the settlement. None of these issues were raised by the Pipelines in response to the defendants' motion for summary judgment. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. *Bergstrom*, 266 Kan. at 871. A party cannot escape summary judgment on the mere hope that something may develop later in discovery or at trial by remaining silent and later claiming additional facts supporting a defense. *Sade v. Hemstrom*, 205 Kan. 514, 521, 471 P.2d 340 (1970).

We conclude that the Pipelines failed to establish in their response to the motion for summary judgment that genuine issues of material facts existed. Thus, the motion was ripe for summary judgment.

(4) Was *In Re Tax Appeal of Colorado Interstate Gas Co.*, correctly decided and is that case determinative of this case?

Before addressing whether *In Re Tax Appeal of Colorado Interstate Gas Co.*, is dispositive of this case, we pause briefly to respond to the Pipelines' argument that the district court erred in granting summary judgment on the basis that the Pipelines were not harmed by the consent decree because their own taxes were not increased. The district court's first basis for granting summary judgment as expressed by the court stated:

"Here, the Plaintiffs clearly were not harmed, only the State of Kansas and its subdivisions were harmed. Plaintiffs paid no more taxes; Plaintiffs just did not pay any less taxes. Thus, Plaintiffs, absent proof their taxes were increased, can demonstrate no loss. . . . Thus, Plaintiffs would have no federal or state equal protection claim, no Commerce Clause claim, and no claim Art. 1, § 11(1)(b)(1989) [*sic*] of the Kansas Constitution has been violated whether the 4-R Act applied for the tax year 1989 or not."

The above conclusion is not correct and therefore provides no basis for the granting of summary judgment. See *Allegheny Pittsburgh Coal. v. Webster County*, 488 U.S. 336, 338-42, 102 L. Ed. 2d 688, 109 S. Ct. 633 (1989). In *Allegheny*, the tax assessor for Webster County in West Virginia applied a different assessment to property based on the price for which it had last been sold, with some adjustments. The result of this assessment method was that some similarly situated property was undervalued for taxation purposes resulting in lower taxes for that property. The owners of property which had not been undervalued filed suit alleging that they should be entitled to the same undervaluation. The state court found that because other property had been undervalued did not require the complaining taxpayer's assessments to be reduced. However, the United States Supreme Court disagreed, stating:

"We agree with the import of the opinion of the Supreme Court of Appeals of West Virginia that petitioners have no constitutional complaint simply because

their property is assessed for real property tax purposes at a figure equal to 50% of the price paid for it at a recent arm's-length transaction. But their complaint is a comparative one: while their property is assessed at 50% of what is roughly its current value, neighboring comparable property which has not been recently sold is assessed at only a minor fraction of that figure. We do not understand the West Virginia Supreme Court of Appeals to have disputed this fact. We read its opinion as saying that even if there is a constitutional violation on these facts, the only remedy available to petitioners was an effort to have the assessments on the neighboring properties raised by an appropriate amount. We hold that the assessments on petitioner's property in this case violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and that petitioners may not be remitted to the remedy specified by the Supreme Court of Appeals of West Virginia." 488 U.S. at 342-43.

The Court went on to state:

" '[I]ntentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property.' [Citations omitted.] 'The equal protection clause . . . protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class.' [Citation omitted.] We have no doubt that petitioners have suffered from such 'intentional systematic undervaluation by state officials' of comparable property in Webster County. Viewed in isolation, the assessments for petitioners' property may fully comply with West Virginia law. But the fairness of one's allocable share of the total property tax burden can only be meaningfully evaluated by comparison with the share of others similarly situated relative to their property holdings. The relative undervaluation of comparable property in Webster County over time therefore denies petitioners the equal protection of the law." 488 U.S. at 345-46.

*Allegheny*, and the cases cited therein, hold that because a taxpayer is taxed according to the law, that taxpayer may still suffer actionable discrimination under the Equal Protection Clause if similarly situated taxpayers are granted more favorable treatment. 488 U.S. at 345-46. We have held that the protection granted by uniform and equal rate of assessment and taxation provision found in Article. 11, § 1 of the Kansas Constitution is virtually identical to the protection granted under the Equal Protection Clause. *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, 583, 701 P.2d 1314 (1985). As a result, the district court's conclusion that the Pipelines did not have an actionable claim because they paid no more in taxes than they would have if the consent decree was not

entered into is incorrect. If the railroads were indeed similarly situated as the Pipelines, the favorable treatment afforded them under the consent decree may still give rise to an actionable equal protection claim if it qualifies as "intentional systematic undervaluation" against the taxpayer.

However, even though the trial court's first basis for granting summary judgment is not supported, if the second basis is sound and warrants summary judgment, this court will affirm. The Pipelines began their oral argument before this court with an acknowledgment of the difficult task they face in attempting to convince this court that its decision in *In re Tax Appeal of Colorado Interstate Gas Co.*, was wrongly decided. The district court's second basis for granting summary judgment to the defendants was the two prior cases we decided, *In re Tax Appeal of Colorado Interstate Gas Co.*, and *In re Tax Appeal of ANR Pipeline Co.* The district court determined that all arguments raised in this case were fully disposed of in the two prior cases and res judicata applied. Moreover, the district court determined that *In re Tax Appeal of Colorado Interstate Gas Co.*, controls in this case.

We have held that for res judicata to apply, there must be a concurrence of four conditions: (1) identity in the things sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity in the quality of the persons for or against whom the claim is made. *In re Estate of Reed*, 236 Kan. 514, 519, 693 P.2d 1156 (1985). Res judicata requires that all the grounds and theories upon which a cause of action or claim is founded to be asserted in one action or they will be barred in any subsequent action and applies not only to every question actually presented, considered, or decided, but also to every question which might have been presented and decided. 236 Kan. at 519.

The constitutional questions raised by the Pipelines in this case regarding the 80% exemption for railroad property was completely addressed by this court in *In re Tax Appeal of Colorado Interstate Gas Co.*, 258 Kan. at 316-17. This court ruled that the 80% exemption, although it was probably not required by the 4-R Act in light of the United States Supreme Court's decision in *ACF Industries*, was nonetheless not discriminatory because it was man-

dated by a consent decree reached as a settlement of litigation. 258 Kan. at 317. The only difference between the two cases are that they reference different tax years.

In *Tait v. Western Md. Ry. Co.*, 289 U.S. 620, 624, 77 L. Ed. 1405, 53 S. Ct. 706 (1933), the United States Supreme Court held that as a general rule parties are precluded from litigating a right or question adjudicated as to a former tax year where the issues and facts involved remain the same. It is questionable whether that general rule should apply in this case. The underlying question of whether the Pipelines' rights were violated by the failure to give them the same tax exemption given to the railroad is the same as that addressed in *In re Tax Appeal of Colorado Interstate Gas Co.*

The Pipelines argue that res judicata should not apply because they were never actually granted a fair opportunity to litigate the issues. They contend that our decisions *In re Tax Appeal of ANR Pipeline* and *In re Tax Appeal of Colorado Interstate Gas Co.* went beyond the issues raised in the appeal and that as a result they were denied an opportunity to properly litigate the issues before the decisions were entered, thus, offending due process.

A judgment entered in a manner inconsistent with due process is void. *In re Marriage of Hampshire*, 261 Kan. 854, 862, 934 P.2d 58 (1997); *Automatic Feeder Co. v. Tobey*, 221 Kan. 17, 21, 558 P.2d 101 (1976). If the Pipelines were denied due process in presenting their claims in the earlier cases then the judgments would be void and have no res judicata effect. A void judgment is a nullity and may be vacated at any time. *Bazine State Bank v. Pawnee Prod. Serv., Inc.*, 245 Kan. 490, 495-96, 781 P.2d 1077 (1989).

The Pipelines' main argument in this regard is that they were never given an opportunity to fully present their constitutional arguments in *In re Tax Appeal of Colorado Interstate Gas Co.* Their contention is that this court addressed the constitutional arguments *sua sponte*, thus, depriving them of due process. Perhaps the best response to this argument is found in the words of the Tenth Circuit in the case of *ANR Pipeline Company v. LaFaver*, wherein the court addressing virtually the same issue said:

"Although the pipelines did not persuade the Kansas courts to give them the relief they sought, they did have the opportunity to raise all their constitutional claims,

and in fact they availed themselves of such opportunities. An adequate state remedy only guarantees adequate due process access to the state courts; it does not guarantee victory to the taxpayer on the merits of the claims asserted." 150 F.3d at 1192-1193.

In the final analysis, we believe that the district court correctly determined that the doctrine of res judicata applies. However, the district court's decision is further based upon its determination that *In re Tax Appeal of Colorado Interstate Gas Co.* is controlling precedent regarding the issue raised in the case at hand.

In *In re Tax Appeal of Colorado Interstate Gas Co.*, we determined that the granting of an 80% tax exemption to railroads while denying such an exemption to the Pipelines was not discriminatory because the exemption was the result of a settlement of litigation. We are not dealing with a "deliberately adopted system" which intentionally discriminates, but, instead, we are dealing with the "settlement of a lawsuit." Compare *Cumberland Coal Co. v. Bd. of Revision*, 284 U.S. 23, 25, 76 L. Ed. 146, 52 S. Ct. 48 (1931), with *In re Tax Appeal of Colorado Interstate Gas Co.* 258 Kan. at 317. The Pipelines made no claim in response to the defendant's motion for summary judgment that the settlement was collusive or otherwise not in good faith. *In re Tax Appeal of Colorado Interstate Gas Co.*, as determined by the district court, controls and supports the summary judgment in this case.

Affirmed.

ABBOTT, J., not participating.

STEPHEN D. HILL, District Judge., assigned.